FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2015 JUN 16 AM 9:20

CLERK US DISTRICT COURT

**FEDERAL TRADE COMMISSION** and
**OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS,**

Plaintiffs,

v.

Case: No.: 8:15 cv 1417 T23 EAJ

**E.M. SYSTEMS & SERVICES, LLC**, a Florida limited liability company; **ADMINISTRATIVE MANAGEMENT & DESIGN, LLC**, a Florida limited liability company; **KLS INDUSTRIES, LLC, d/b/a SATISFIED SERVICE SOLUTIONS, LLC**, a Florida limited liability company; **EMPIRICAL DATA GROUP TECHNOLOGIES, LLC**, a Florida limited liability company; **EPIPHANY MANAGEMENT SYSTEMS, LLC**, a Florida limited liability company; **STEVEN D. SHORT**, an individual; **KARISSA L. DYAR**, an individual; **ONE EASY SOLUTION LLC**, a Florida limited liability company; and **CHRISTOPHER C. MILES**, an individual,

Defendants.
_______________________________________/

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

**(FILED UNDER TEMPORARY SEAL)**[1]

Plaintiffs, FEDERAL TRADE COMMISSION ("FTC") and OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS (the "Florida Attorney General"), sue Defendants E.M. SYSTEMS & SERVICES, LLC, ADMINISTRATIVE MANAGEMENT & DESIGN, LLC, KLS INDUSTRIES, LLC, d/b/a

[1] Motion to seal filed concurrently.



w.v

S-1

SATISFIED SERVICES SOLUTIONS, LLC, EMPIRICAL DATA GROUP TECHNOLOGIES, LLC, EPIPHANY MANAGEMENT SYSTEMS, LLC, STEVEN D. SHORT, KARISSA L. DYAR, ONE EASY SOLUTION LLC, and CHRISTOPHER C. MILES (collectively "Defendants"), and allege:

**SUMMARY OF THE CASE**

1. Through a web of entities and fictitious business names, Defendants operate a nationwide credit-card-interest-rate-reduction telemarketing scam (the "Debt Relief Scam"). The Debt Relief Scam works by cold calling consumers with false promises that Defendants will reduce consumers' interest rates on their credit cards, save them thousands of dollars in a short time period, and refund consumers' money if the promised savings are not realized. Defendants charge an advance fee of about $1,000 on average to consumers who fall prey to these false promises. In return for the hefty fees that they pay, most consumers do not achieve any debt relief at all, but instead find themselves saddled with even more debt than before because of the fees Defendants charge to their credit cards.

2. Defendants' Debt Relief Scam is not new; it is a reiteration of a scam that continues to surface. Indeed, two of the individual Defendants here, Steven Short and Karissa Dyar, participated in a near-identical scam that was recently shut down by this Court, *FTC v. Pro Credit Group*, Case No. 8:12-cv-00586-T-35EAJ (M.D. Fla.).

3. Enticing consumers to pay significant sums of money through false promises of debt relief can be a lucrative business. Indeed, since January 2013 Defendants have taken millions of dollars from consumers through their Debt Relief Scam.

4. Consumers injured by Defendants' scheme have submitted hundreds of complaints about the Debt Relief Scam to the Florida Attorney General, FTC, and Better

Business Bureau ("BBB").

5. In light of these facts, which are explained below in detail, the FTC and Florida Attorney General bring this action to halt Defendants' Debt Relief Scam.

**STATUTORY AUTHORITY**

6. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

7. The Florida Attorney General brings this action for damages, injunctive relief, and other statutory relief under the Telemarketing Act, 15 U.S.C. § 6103(a) and under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2014), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for violations of the TSR, 16 C.F.R. Part 310, and FDUTPA in connection with the marketing and sale of debt relief services.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over the FTC's claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b(a), 6102(c), and 6105(b).

9. This Court has subject matter jurisdiction over the Florida Attorney General's

TSR claims pursuant to 15 U.S.C. § 6103(a).

10. This Court has supplemental jurisdiction over the Florida Attorney General's FDUTPA claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims brought under federal law that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the claims brought pursuant to 15 U.S.C. § 6103(a).

11. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), 15 U.S.C. § 53(b), and 15 U.S.C. § 6103(e).

## PLAINTIFFS

12. **Plaintiff Federal Trade Commission** is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

13. The FTC also enforces the Telemarketing Act, 15 U.S.C. § 6102. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

14. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c), and 6105(b).

15. **Plaintiff State of Florida, Office of the Attorney General, Department of Legal Affairs**, is authorized to bring this action and to seek injunctive and other statutory relief

to enforce the TSR pursuant to 15 U.S.C. § 6103(a). The Florida Attorney General may seek to enjoin violations of the TSR, and to obtain such equitable relief as may be appropriate, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. *See* 15 U.S.C. § 6103(a). The Florida Attorney General has reason to believe that the interests of the residents of Florida are being threatened or adversely affected by the Debt Relief Scam, and it brings this action on behalf of its residents. The Florida Attorney General has complied with all conditions precedent to bringing this action.

16. The Florida Attorney General is an enforcing authority of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2014). The Florida Attorney General has conducted an investigation of the matters alleged herein, and the head of the enforcing authority, Attorney General Pamela Jo Bondi, has determined that this enforcement action serves the public interest.

17. As an enforcing authority under FDUTPA, the Florida Attorney General is authorized to pursue this action to enjoin FDUTPA violations and to obtain legal, equitable, or other appropriate relief, including restitution, the refund of monies paid, disgorgement of ill-gotten monies, civil penalties, and other relief as may be appropriate pursuant to Sections 501.207, 501.2075, and 501.2077, Florida Statutes.

## DEFENDANTS

18. As explained below, this case involves two sets of defendants: the E.M. Systems Defendants and the One Easy Defendants. The E.M. Systems Defendants are the five entities and two individuals at the center of the Debt Relief Scam, and the One Easy Defendants are the E.M. Systems Defendants' largest domestic telemarketer and its owner.

## THE E.M. SYSTEMS DEFENDANTS

19. **Defendant E.M. Systems & Services, LLC, ("E.M. Systems")** is a Florida limited liability company with its principal place of business at a United Parcel Service ("UPS") store located at 6822 22nd Avenue North, St. Petersburg, Florida 33710. E.M. Systems transacts or has transacted business in this district and throughout the United States.

20. **Defendant Administrative Management & Design, LLC, ("AM&D")** is a Florida limited liability company with its principal place of business at a UPS store located at 6822 22nd Avenue North, St. Petersburg, Florida 33710. AM&D transacts or has transacted business in this district and throughout the United States.

21. **Defendant KLS Industries, LLC, d/b/a Satisfied Services Solutions, LLC, ("KLS")** is a Florida limited liability company with its principal place of business in Pinellas County, Florida, at a PakMail store located at 873 West Bay Drive, Suite 142, Largo, Florida 33770. KLS also has an office at 9365 U.S. Highway 19 North, Suite A, Pinellas Park, Florida 33782. KLS transacts or has transacted business in this district and throughout the United States.

22. **Defendant Empirical Data Group Technologies, LLC, ("EDG Tech")** is a Florida limited liability company with its principal place of business at 7441 114th Avenue, Suite 601, Largo, Florida 33773. EDG Tech transacts or has transacted business in this district and throughout the United States.

23. **Defendant Epiphany Management Systems, LLC, ("Epiphany")** is a Florida limited liability company with its principal place of business at Defendant Short's and Defendant Dyar's home address in Seminole, Florida. Epiphany transacts or has transacted business in this district and throughout the United States.

24. **Defendant Steven D. Short ("Short")** is the owner and sole member manager of

Defendants E.M. Systems, AM&D, EDG Tech, and Epiphany. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had authority to control, or participated in the acts and practices of E.M. Systems, AM&D, EDG Tech, and Epiphany, including the acts and practices set forth in this Complaint. Short resides in Pinellas County, Florida, and has transacted business in this district and throughout the United States.

25. **Defendant Karissa Dyar ("Dyar")** is the owner and sole member manager of Defendant KLS. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had authority to control, or participated in the acts and practices of KLS, including the acts and practices set forth in this Complaint. Dyar resides in Pinellas County, Florida, and has transacted business in this district and throughout the United States.

## THE ONE EASY DEFENDANTS

26. **Defendant One Easy Solution LLC ("One Easy")** is a Florida limited liability company with its principal place of business at 2750 Taylor Ave, Suite B6, Orlando, FL 32806. One Easy transacts or has transacted business in this district and throughout the United States.

27. **Defendant Christopher C. Miles ("Miles")** is the owner and one of two managers of Defendant One Easy. Until November 2014, Miles was the owner and sole manager of One Easy. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had authority to control, or participated in the acts and practices of One Easy, including the acts and practices set forth in this Complaint. Miles resides in Orange County, Florida, and has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

28. E.M. Systems, AM&D, EDG Tech, KLS, and Epiphany (the "E.M. LLC's") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations alleged below. The E.M. LLC's have conducted the business practices described below through an interrelated network of companies that have common ownership, managers, business functions, office locations, phone numbers, websites, and advertising, and that commingled funds.

29. Indeed, each of the E.M. LLC's exists for the purpose of carrying out the Debt Relief Scam and funneling the final profits directly and indirectly to Short and Dyar, who are husband and wife. Because the E.M. LLC's have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Short and Dyar have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the E.M. LLC's that constitute the common enterprise.

## COMMERCE

30. At all times material to this Complaint, Defendants have maintained a substantial course of trade in the offering for sale and sale of goods or services via telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44, and as "trade or commerce" is defined in Section 501.203(8), Florida Statutes.

## DEFENDANTS' BUSINESS ACTIVITIES

31. Since at least January 2013, Defendants have engaged in a scheme to defraud consumers through their Debt Relief Scam, which they have carried out under numerous fictitious business names with associated websites, including:

| Fictitious Business Name | Internet Domain Name |
| --- | --- |
| a. Applied Budgeting | (appliedbudgeting.com); |

| | | |
|---|---|---|
| b. | Bigger Budget | (biggerbudget.com); |
| c. | Competitive Budgeting | (competitivebudgeting.com); |
| d. | Complete Budgeting | (completebudgeting.com); |
| e. | Conserved Budgeting | (conservedbudgeting.com); |
| f. | Consigned Savings | (consignedsavings.com): |
| g. | Decisive Budgeting | (decisivebudgeting.com); |
| h. | Efficient Budgeting | (efficientbudgeting.com); |
| i. | Insightful Budgeting | (insightfulbudgeting.com); |
| j. | Intuitive Budgeting | (intuitivebudgeting.com); |
| k. | Less Costly Living | (lesscostlyliving.com); |
| l. | Living Competitively | (livingcompetitively.com); |
| m. | Lowered Expenses | (loweredexpenses.com); |
| n. | Prepared Budgeting | (preparedbudgeting.com); |
| o. | Reduced Expenses | (reducedexpenses.com); |
| p. | Resourceful Budgeting | (resourcefulbudgeting.com); |
| q. | Sensible Budgeting | (sensiblebudgeting.com); |
| r. | Skilled Budgeting | (skilledbudgeting.com); |
| s. | Spend Less Monthly | (spendlessmonthly.com); |
| t. | Total Budgeting | (totalbudgeting.com); |
| u. | Today's Financial Living | (todaysfinancialliving.com); |
| v. | Your Household Budget | (yourhouseholdbudget.com); and |
| w. | Your Next Financial Step | (yournextfinancialstep.com). |

32. Behind these fictitious names are Short and Dyar who control and operate the Debt Relief Scam through the E.M. LLC's, and who hire telemarketers, such as One Easy, to pitch their purported debt relief services to consumers.

33. Defendants are engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call.

## THE SALES PITCH

34. Defendants contact consumers that have existing credit card debts through unsolicited telephone calls.

35. In these unsolicited telephone calls, the E.M. Systems Defendants' telemarketers, including One Easy, at the direction and under the control of the E.M. Systems Defendants, identify themselves as being with "card services," "credit services," "card member services," or

one of the unregistered fictitious businesses listed in Paragraph 31.

36. The telemarketers then often take steps to win consumers' trust and create an air of legitimacy to their sales pitch, including: (1) falsely stating that they are affiliated, or have business relationships, with consumers' lenders; (2) telling consumers that they already have their personal information, such as the names of some of their credit cards and/or the amount of their credit card debt; (3) providing the consumer with a license, ID, or badge number; and (4) directing consumers to the Internet domain name of the fictitious business name being used for the call.

37. After taking these initial steps to win consumers' trust, the telemarketers make the sales pitch. The telemarketers promise consumers that Defendants will negotiate directly with the consumers' credit card companies to obtain an interest rate reduction and save them thousands of dollars on their credit card debts within a specific time period. The telemarketers typically promise a specific interest rate (*e.g.*, a reduction to 6% or lower), and a specific minimum amount of savings (*e.g.*, $5,000 amount of savings in ninety days).

**THE ADVANCE FEE AND MONEY-BACK GUARANTEE**

38. The fee quoted by the telemarketers for the purported services is usually between $695 and $1,495.

39. The telemarketers convince consumers to pay the fee by promising that if they do not obtain at least a specific amount of savings (usually between $2,500 and $5,000) within a specific number of days (usually sixty or ninety days), then the consumers' fees will be refunded.

40. Consumers who decide to purchase Defendants' purported services are asked for their credit card numbers and billing information. Defendants charge consumers' credit cards during the telemarketing call before any of the purported debt relief services are provided.

Consumers are told that they will receive a contract or service agreement and documents for their signature shortly and that they should promptly return those documents.

**CONSUMERS DO NOT RECEIVE WHAT THEY ARE PROMISED**

41. In some instances, after consumers pay the hefty up-front fee, the consumers never hear from Defendants again and the consumers' attempts at further communication are ignored.

42. In other instances, after consumers pay the hefty up-front fee, Defendants send the consumers a package of documents with information about Defendants' purported services and forms for the consumers to fill out and return. Often among these documents sent by Defendants is a "Frequently Asked Questions" guide that reiterates the promise that Defendants "simply and aggressively negotiates with your creditor(s) to provide you with substantial saving."

43. For consumers who complete and return the forms sent by Defendants, the Defendants then sometimes send a "Customized Budget Plan," which simply provides consumers with obvious advice such as that paying more than the minimum payments each month will result in the credit card debt being paid off faster.

44. Defendants rarely, if ever, provide the interest rate reductions and savings that they promise to consumers.

45. When consumers follow up with Defendants on the status of interest rate negotiations, Defendants sometimes stall consumers by saying that the negotiations are ongoing. In fact, most credit card issuers do not negotiate interest rates, and most typically will not discuss consumers' accounts with third parties such as Defendants.

46. Although Defendants promise consumers that they can obtain a full refund if they do not save thousands of dollars within a certain number of days, Defendants frequently do not

honor this money-back guarantee. Not only do Defendants frequently refuse to give refunds, they also sometimes threaten consumers or subject them to abusive language when they attempt to obtain refunds from Defendants.

47. In sum, Defendants do not keep their promises to consumers: Defendants typically do not obtain lower interest rates for consumers; do not save consumers thousands of dollars in a specific time period; and do not return consumers' money. Instead, consumers who fall prey to the Debt Relief Scam often end up more indebted than before because of the Defendants' hefty fees.

## VIOLATIONS OF THE FTC ACT

48. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

49. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

## DECEPTIVE MARKETING IN VIOLATION OF THE FTC ACT

**(By Plaintiff FTC against all Defendants)**

50. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defendants represent, directly or indirectly, expressly or by implication, that:

a. Defendants are affiliated, or have established business relationships, with consumers' lenders;

b. Consumers who purchase Defendants' debt relief services will have their credit card interest rates reduced;

c. Consumers who purchase Defendants' debt relief services will save thousands of

dollars in a short time period; and

d. Defendants will provide full refunds if consumers do not save thousands of dollars in a short time period.

51. In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 50 of this Complaint:

a. Defendants are not affiliated, and do not have established business relationships, with consumers' lenders;

b. Consumers who purchase Defendants' debt relief services do not have their credit card interest rates reduced;

c. Consumers who purchase Defendants' debt relief services do not save thousands of dollars in a short time period; and

d. Defendants do not provide full refunds when consumers fail to save thousands of dollars in a short time period.

52. Therefore, Defendants' representations as set forth in Paragraph 50 of this Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TSR

53. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

54. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c) and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an

unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

55. Defendants are "sellers" and/or "telemarketers" engaged in "telemarketing," and have initiated, or have caused telemarketers to initiate, "outbound telephone calls" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd). Defendants also are sellers or telemarketers of "debt relief services," as defined by the TSR, 16 C.F.R. § 310.2(m).

56. Defendants market and sell a "debt relief service," as that term is defined in the TSR. 16 C.F.R. § 310.2(m) ("debt relief service" defined as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payments or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector").

57. The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of any debt relief service. 16 C.F.R. § 310.3(a)(2)(x).

58. The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(iv).

59. The TSR prohibits sellers and telemarketers from requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

a. The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt

management plan, or other such valid contractual agreement executed by the customer;

b. The consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

c. To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either (1) bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount; or (2) is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. 16 C.F.R. § 310.4(a)(5)(i).

## COUNT II

## DECEPTIVE REPRESENTATIONS ABOUT DEBT RELIEF SERVICES IN VIOLATION OF THE TSR

**(By Plaintiffs FTC and Florida Attorney General against all Defendants)**

60. In numerous instances in connection with the telemarketing of debt relief services, Defendants misrepresent, directly or indirectly, expressly or by implication, that:

a. Defendants are affiliated, or have established business relationships, with consumers' lenders;

b. Consumers who purchase Defendants' debt relief services will have their credit card interest rates reduced; and

c. Consumers who purchase Defendants' debt relief services will save thousands of dollars in a short time period.

61. Defendants' acts and practices, as set forth in Paragraph 60 of this Complaint, are

deceptive telemarketing practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(x).

**COUNT III**

**DECEPTIVE REPRESENTATIONS ABOUT REFUNDS IN VIOLATION OF THE TSR**

**(By Plaintiffs FTC and Florida Attorney General against all Defendants)**

62. In numerous instances in connection with the telemarketing of debt relief services, Defendants misrepresent, directly or indirectly, expressly or by implication, that Defendants will provide full refunds if consumers do not save thousands of dollars in a short time period.

63. Defendants' acts and practices, as set forth in Paragraph 62 of this Complaint, are deceptive telemarketing practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iv).

**COUNT IV**

**ADVANCE FEES FOR DEBT RELIEF SERVICES IN VIOLATION OF THE TSR**

**(By Plaintiffs FTC and Florida Attorney General against all Defendants)**

64. In numerous instances in connection with the telemarketing of debt relief services, Defendants request or receive payment of a fee or consideration for such services before (a) they have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer has made at least one payment pursuant to that agreement.

65. Defendants' acts and practices, as set forth in Paragraph 64 of this Complaint, are abusive telemarketing practices that violate the TSR, 16 C.F.R. § 310.4(a)(5)(i).

**VIOLATIONS OF FDUTPA**

66. Section 501.204(1), Florida Statutes, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

67. Section 501.203(8), Florida Statutes, defines "trade or commerce" as:

> the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

## COUNT V

## DECEPTIVE REPRESENTATIONS IN VIOLATION OF FDUTPA

**(By Plaintiff Florida Attorney General against all Defendants)**

68. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defendants represent, directly or indirectly, expressly or by implication, that:

a. Defendants are affiliated, or have established business relationships, with consumers' lenders;

b. Consumers who purchase Defendants' debt relief services will have their credit card interest rates reduced;

c. Consumers who purchase Defendants' debt relief services will save thousands of dollars in a short time period; and

d. Defendants will provide full refunds if consumers do not save thousands of dollars in a short time period.

69. In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 68 of this Complaint:

a. Defendants are not affiliated, and do not have established business relationships, with consumers' lenders;

b. Consumers who purchase Defendants' debt relief services do not have their credit

card interest rates reduced;

c. Consumers who purchase Defendants' debt relief services do not save thousands of dollars in a short time period; and

d. Defendants do not provide full refunds when consumers fail to save thousands of dollars in a short time period.

70. Therefore, Defendants' representations as set forth in Paragraph 68 are false and misleading, constitute deceptive acts or practices in violation of Section 501.204(1), Florida Statutes, and were likely to mislead a consumer acting reasonably. As a result, consumers within the state of Florida and elsewhere were actually misled by the representations set forth in Paragraph 68.

## CONSUMER INJURY

71. Consumers throughout the United States, including those in the state of Florida, have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, TSR, and FDUTPA. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THE COURT'S POWER TO GRANT RELIEF

72. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

73. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

74. The count based upon FDUTPA may be enforced by this Court through its supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and this Court may award relief under Chapter 501, Part II, Florida Statutes, including injunctive relief, restitution, costs and attorneys' fees, and such other relief to which the Florida Attorney General may be entitled.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. §6105(b), FDUTPA, Chapter 501, Part II, Florida Statutes (2014), and the Court's own equitable powers, request that the Court:

A. Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B. Enter a permanent injunction to prevent future violations of the FTC Act, TSR, and FDUTPA by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, TSR, and FDUTPA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the

disgorgement of ill-gotten monies; and

D. Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: June 15, 2015

Respectfully submitted,

FEDERAL TRADE COMMISSION

Jonathan E. Nuechterlein
General Counsel

S. Spencer Elg, GA Bar #94[illegible]592
selg@ftc.gov
Nicholas M. May, DC Bar # 979754
nmay@ftc .gov
Anna M. Burns, GA Bar # 558234
aburns@ftc.gov
225 Peachtree Street NE, Ste 1500
Atlanta, GA 30303
Phone: 404-656-1354 (Elg)
404-656-1360 (May)
404-656-1350 (Burns)
Fax: 404-656-1390

OFFICE OF THE ATTORNEY GENERAL
THE STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS

Pamela Jo Bondi
Attorney General

Amanda Arnold Sansone, FL Bar # 587311
amanda.sansone@myfloridalegal.com
Jennifer Hayes Pinder, FL Bar #017325
jennifer.pinder@myfloridalegal.com
3507 East Frontage Road #325
Tampa, Florida 33607
Phone: 813-287-7950
Fax: 813-281-5515