**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FEDERAL TRADE COMMISSION** and
**OFFICE OF THE ATTORNEY GENERAL,**
**STATE OF FLORIDA,**
**DEPARTMENT OF LEGAL AFFAIRS**,

        Plaintiffs,

v.                                    Case No.:  8:15-cv-1417-T-23AEP

**E.M. SYSTEMS & SERVICES, LLC**, a Florida
limited liability company; **ADMINISTRATIVE**
**MANAGEMENT & DESIGN, LLC**, a Florida
limited liability company; **KLS INDUSTRIES, LLC,**
**d/b/a SATISFIED SERVICE SOLUTIONS, LLC**,
a Florida limited liability company; **EMPIRICAL**
**DATA GROUP TECHNOLOGIES, LLC**, a Florida
limited liability company; **EPIPHANY MANAGEMENT**
**SYSTEMS, LLC**, a Florida limited liability company;
**STEVEN D. SHORT**, an individual; **KARISSA L.**
**DYAR**, an individual; **ONE EASY SOLUTION LLC**, a
Florida limited liability company; **CHRISTOPHER**
**C. MILES**, an individual; **JASON E. GAGNON**,
an individual; **KENNETH A. SALLIES**, an individual;
**MATTHEW B. THOMAS**, an individual;
**CARDREADY, LLC**, a California limited liability
company; **BRANDON A. BECKER**, an individual;
**JAMES F. BERLAND**, an individual; and **ANDREW**
**S. PADNICK**, an individual,

        Defendants.

_____

**PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF**
**ENTRY OF DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION**
**AND OTHER EQUITABLE RELIEF AS TO DEFENDANT KENNETH A. SALLIES**

        Plaintiffs, the Federal Trade Commission ("Commission" or "FTC") and the Office of the

Attorney General, State of Florida, Department of Legal Affairs ("Florida Attorney General"),

respectfully move this Court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of default judgment against Defendant Kenneth A. Sallies and an order for permanent injunctive relief and equitable monetary relief.

## INTRODUCTION

The Amended Complaint alleges that Sallies, along with his co-defendants,[1] used misrepresentations to entice consumers into paying hefty fees for debt relief services they never received. (Doc. 58 ¶¶ 41-57; 92-120).  Because Sallies failed to file a response to the Amended Complaint, which the Clerk has noted by entering default against him (Doc. 110), these well-pled allegations of fact are deemed admitted. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir. 2009) (holding that a "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Sallies has thus conceded that he, as alleged in the Amended Complaint, is liable for violations of the Federal Trade Commission Act ("FTC Act,') the Telemarketing Sales Rule or the "TSR," and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). (Doc. 58 ¶¶ 92-110; 115-120).  The Court should therefore enter a default judgment against him.

Plaintiffs have submitted a proposed default judgment with this motion. The proposed default judgment includes injunctive provisions tailored to the facts alleged in the Amended Complaint, including "fencing-in" provisions necessary to deter future law violations. *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) (noting that in FTC cases courts are "not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past" and that defendants "must expect some fencing in"). The proposed default judgment also awards Plaintiffs $2,567,174.00 in monetary relief. That monetary award—which, to the

---

[1] Plaintiffs have reached tentative settlement agreements with all other Defendants in this matter, including Defendant One Easy Solution, LLC ("One Easy"), Jason Gagnon, Matthew Thomas, and Christopher Miles. Gagnon, Thomas, and Miles were co-owners and co-managers of One Easy with Sallies.

extent practicable, will be used for consumer redress—is fully justified by evidence already in the record, "such that any additional evidence" is "truly unnecessary to a fully informed determination of damages." *See SEC v. Smyth*, 420 F.3d 1225, 1231, n.13 (11th Cir. 2005).

## PROCEDURAL BACKGROUND AND FACTUAL STATEMENT

### A.  Procedural Background

On June 16, 2015, Plaintiffs filed their Complaint (Doc. 1) and *Ex Parte* Motion for Temporary Restraining Order with Asset Freeze, Appointment of a Receiver and Other Equitable Relief (Doc. 4).  The Court granted the requested TRO and later entered a preliminary injunction order on June 30, 2015 (Doc. 28).  After initial discovery, Plaintiffs filed their First Amended Complaint (Doc. 58) on December 21, 2015, adding additional corporate and individual defendants, including Sallies, to the action.  The Amended Complaint alleged, *inter alia*, that Sallies and other defendants engaged in a scheme to defraud consumers through a credit-card-interest-rate-reduction scam ("the Debt Relief Scam"), and thereby violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the Telemarketing Sales Rule , 16 C.F.R. Part 310; and Section 501.204 of FDUTPA.

On March 25, 2016, this Court entered an Order allowing Plaintiffs to serve Sallies by publication, and the *Orlando Sentinel* and *Tampa Bay Times* published Sallies' Notice by Publication on eight days in late March and April 2016.  Sallies failed to plead or otherwise defend, which prompted Plaintiffs to file a Motion for Clerk's Default, which the Clerk entered on June 14, 2016 (Doc. 110).  To date, Sallies has not sought to set aside the default or otherwise plead.  Accordingly, a motion for default judgment against Sallies is appropriate.

Pursuant to Local Rule 3.01(g), Plaintiffs certify that they have conferred with the parties regarding this motion.  Counsel for the Commission and the Florida Attorney General conferred

with counsel for the Court-appointed Receiver and counsel for the other Defendants in this action.  None object to this motion.

### B.      Factual Statement

Since at least January 2013, Sallies and other defendants engaged in a nationwide scheme to defraud consumers through the Debt Relief Scam, taking millions of dollars from consumers. (Doc. 58. ¶¶ 7, 11).  Sallies was an owner and manager of Defendant One Easy Solution LLC ("One Easy")( Doc. 58.   ¶ 32), which served as the Debt Relief Scam's largest domestic telemarketer (Doc. 58 ¶ 20).

Sallies and One Easy made unsolicited telephone calls to consumers that had existing credit card debts.  Sallies and One Easy made sales pitches to those consumers, telling them that: (1) the Debt Relief Defendants[2] were affiliated or had established business relationships with consumers' lenders (Doc. 58 ¶¶ 45-46, 92, 105, 118); (2) consumers who purchased the Debt Relief Defendants' services would have their credit card interest rates reduced (Doc. 58 ¶¶ 47, 92, 105, 118); (3) consumers who purchased the Debt Relief Defendants' services would save thousands of dollars in a short time period (Doc. 58 ¶¶ 47, 92, 105, 118); and (4) consumers would receive full refunds if consumers do not save thousands of dollars in a short time period (Doc. 58 ¶ 48-49, 92, 105, 118).  Consumers who decided to purchase the purported debt relief services were asked for their credit card numbers and billing information (Doc. 58 ¶ 50) and paid a fee of between $695 and $1,495.  (Doc. 58 ¶ 48, 109-110).

Sallies and One Easy's representations to consumers were false or unsubstantiated (Doc. 58 ¶¶ 93-94, 106-07, 119-20.)  The Debt Relief Defendants rarely, if ever, provided the interest

---

[2] "Debt Relief Defendants" is a term used in the Amended Complaint that includes **Sallies**, One Easy, and Defendants E.M. Systems & Services, LLC; Administrative Management & Design, LLC; KLS Industries, LLC, d/b/a Satisfied Services Solutions, LLC; Empirical Data Group Technologies, LLC; Epiphany Management Systems, LLC; Steven D. Short; Karissa Dyar; Christopher C. Miles, Jason E. Gagnon; and Matthew B. Thomas. Doc. 58 ¶ 7.  As used in this motion and brief, it has the same meaning, which includes Sallies.

rate reductions and savings that they promised to consumers (Doc. 58 ¶ 54).  In fact, most credit card issuers do not negotiate interest rates, and most typically will not discuss consumers' accounts with third parties such as the Debt Relief Defendants (Doc. 58 ¶ 55).  The money-back guarantee was not honored, and consumers who sought it were sometimes subjected to threats and abusive language (Doc. 58 ¶ 56).  In sum, the Debt Relief Defendants typically did not obtain lower interest rates for consumers; did not save consumers thousands of dollars in a specific time period; and did not return consumers' money.  Instead, consumers who fell prey to the Debt Relief Scam often ended up more indebted than before (Doc. 58 ¶ 57).  Thus, Sallies and One Easy's representations to consumers were deceptive.  (Doc. 58 ¶ ¶ 38, 94).

## ARGUMENT

### I.   BY DEFAULTING, DEFENDANT SALLIES HAS ADMITTED THE FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT AND THEREBY CONCEDED THAT HE IS LIABLE FOR VIOLATIONS OF THE FTC ACT, THE FDUTPA, AND THE TSR

Under Rule 55, a plaintiff may seek entry of a default judgment against a defendant who has "failed to plead or otherwise defend" a suit. Fed. R. Civ. P. 55(b).  A default judgment is warranted where the factual allegations of the complaint, which after a default are deemed admitted, state a claim for relief that is plausible on its face.  *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d at 1307  (holding that a "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).  A complaint does not need to contain detailed factual allegations to state a claim for relief that is plausible on its face, and in fact the factual allegations need only be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Plaintiffs' Amended Complaint states claims for relief under the FTC Act, the

FDUTPA, and the TSR, that are plausible on their face.

### A.   Sallies is liable for violating the FTC Act and FDUTPA[3] (Counts I and VII)

A defendant is liable under the FTC Act for making false or misleading representations if the defendant (1) made a representation (2) that was likely to mislead consumers acting reasonably under the circumstances and (3) the representation was material. *FTC v. Tashman,* 318 F.3d 1273, 1277 (11th Cir. 2003) (citations omitted).  Plaintiffs need not prove subjective reliance by each consumer; rather, a presumption of actual reliance arises once the FTC "has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product." *FTC v. Transnet Wireless Corp*., 506 F. Supp. 2d 1247, 1267 (S.D. Fla. 2007) (citations omitted).

Sallies and his company, One Easy, told the targets of its scam (1) that the Debt Relief Defendants were affiliated with consumers' lenders (Doc. 58 ¶¶ 45-46, 92, 105, 118); (2) that consumers would have their credit card interest rates reduced (Doc. 58 ¶¶ 47, 92, 105, 118); (3) that consumers would save thousands of dollars in a short time period (Doc. 58 ¶¶ 47, 92, 105, 118); and (4) that consumers would receive full refunds if consumers did not save thousands of dollars in a short time period (Doc. 58 ¶ 48-49, 92, 105, 118).

These representations were likely to, and in fact did, mislead reasonable consumers. It is apparent that a representation is likely to mislead consumers if the representation is either false

---

[3] Throughout this Section, Plaintiffs cite cases brought under the FTC Act to support Sallies' liability both under Section 5(a) the FTC Act and Section 501.204 of FDUTPA. This is because conduct that violates Section 5(a) of FTC Act also violates Section 501.204 of the FDUTPA. *See FTC v. Info. Mgmt. Forum, Inc.* No. 6: 12-cv-986, 2013 WL 3323635, at *5 (M.D. Fla. June 28, 2013) ("Conduct that constitutes a deceptive act or practice' ... under the FTC Act is a violation of [Section 501.204 of the FDUTPA]."); FL.A. STAT. ANN. § 501.204 (providing that in construing Section 501.204 "great weight shall be given to the federal courts" interpretations of Section 5 of the FTC Act).  To that end, the Florida Supreme Court has noted that a deceptive practice is one which "involves a material representation or omission that is likely to mislead consumers acting reasonably under the circumstances." See PNR, Inc. 1•. Beacon Prop. Mgmt., /11c., 842 So. 2d 773, 777 (Fla. 2003). Further, §501.203(3)(c), Fla. Stat., provides that a violation of FDUTPA may be based on a violation of any law, statute, rule, regulation, or ordinance which proscribes  . . . "unfair, deceptive, or unconscionable acts or practices."

or lacks a reasonable basis (*see FTC v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir. 1994); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908 (N.D. Ill. 2006), or if consumers are actually deceived by it, *see FTC v. Direct Benefits Grp., LLC*, No. 6:11-CV-1186-ORL-28, 2013 WL 3771322, at *15 (M.D. Fla. July 18, 2013).  Here, as alleged in the Amended Complaint, Sallies' and One Easy's representations were "false or unsubstantiated" (Doc. 58 ¶¶ 94) and consumers were actually misled by them (Doc. 58 ¶¶ 49-57).  In sum, Sallies and One Easy's representations were likely to, and in fact did, mislead reasonable consumers.

Sallies and One Easy's representations were also material.  A representation is material "if it is of a kind usually relied upon by a reasonably prudent person," *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1266 (S.D. Fla. 2007), or if it is an express representations, as express representations are presumptively material, *id.* at 1267. Here, as alleged in the Amended Complaint, consumers relied on the Debt Relief Defendants' representations:  "The telemarketers convinced consumers to pay the fee by promising that if they did not obtain at least a specific amount of savings (usually between $2,500 and $5,000) within a specific number of days (usually sixty or ninety days), then the consumers' fees would be refunded. . ." (Doc. 58 ¶ 49.) In addition, Sallies and One Easy's representations are presumptively material because they were express representations. *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999); *FTC v. Wilcox*, 926 F. Supp. 1091, 1098  (S.D. Fla. 1995).

To hold a defendant individually liable under the FTC Act and FDUTPA, Plaintiffs must establish that (1) the defendant participated directly in the wrongful practices or acts or that he had authority to control a corporation engaging in them; and (2) the defendant had some knowledge of the wrongful acts or practices.  *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996); *FTC v. Amy Travel Serv.*, 875 F.2d 564, 573 (7th Cir. 1989).  Proving the defendant's

actual knowledge of the material representations is not required; Plaintiffs may establish the knowledge requirement by showing that individual had "reckless indifference to the truth or falsity of misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth.'" *Transnet Wireless*, 506 F. Supp. 2d at 1270 (quoting *FTC. v. Amy Travel Serv.* 875 F.2d at 573.. Moreover, "the degree of participation in business is probative of knowledge" *Id.* (citations omitted). Finally, the Plaintiffs do not need to prove that the individual defendant had the intent to defraud. *Id.* (citations omitted).

Sallies directly participated in making the Debt Relief Scam's deceptive representations to consumers (Doc. 58 ¶¶ 92-93; 118-119). Sallies was also an owner and manager of One Easy (Doc. 58 ¶ 32), the company that was Debt Relief Scam's largest domestic telemarketer (Doc. 58 ¶ 20), which itself made deceptive representations to consumers. (Doc. 58 ¶¶ 45-57; 92-94; 105-108). As an owner and manager of One Easy, Sallies had the authority to control the company and his "participation in [the] business is probative of [his] knowledge" of the wrongful acts or practices. *Transnet Wireless* ., 506 F. Supp. 2d at   (citations omitted). Accordingly, Sallies is individually liable under Section 5 of the FTC Act and under FDUTPA because he participated directly in the Debt Relief Scam, had authority to control One Easy, and had, at the very least, some knowledge of the wrongful acts or practices. *FTC v IAB Mktg. Assocs.*, 746 F.3d 1228,1233 (11th Cir. 2014).

### B.  Sallies is liable for violating the TSR (Counts II - IV)

The "identical principles of deception from Section 5 of the FTC Act apply to the TSR, and a violation of the TSR amounts to both a deceptive act or practice and a violation of the FTC Act." *FTC v. Wash. Data Res.*, 856 F.Supp.2d 1247 (M.D. Fla. 2012) (citations omitted). The TSR prohibits a seller or telemarketer from: (a) misrepresenting any material aspect of any debt

relief service; (b) misrepresenting any material aspect of the nature or terms of their refund policy; or (c) requesting or receiving payment of any fee for any debt relief service until and unless the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt on behalf of the customer.  16 C.F.R. §§ 310.3(a)(2)(x),(iv); 310.4(a)(5)(i).  In addition, a violation of the TSR is also a violation of FDUTPA pursuant to §501.203(3)(c), Fla. Stat.

The TSR applies to Sallies because, as alleged in the Amended Complaint, he was a "seller" or "telemarketer" who "in connection with a telemarketing transaction, provide[d] ... or arrange[d] others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2a(z); *see* Doc. 58 ¶¶ 97, 20, 32, 43-44.  The TSR further applies to Sallies' conduct because, as alleged in the Amended Complaint, the services offered by Sallies and One Easy were "debt relief services" that involved "a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor." 16 C.F.R. § 310.2(m); *see* Doc. 58 ¶¶ 98, 45-50.

### 1. Deceptive representations about debt relief services and refunds

Counts II and III of the Amended Complaint allege that Sallies and One Easy violated the TSR for making the same deceptive representations that form the basis of Counts I and VII, namely that: (i) Debt Relief Defendants were affiliated, or had established business relationships, with consumers' lenders; (ii) consumers who purchased the Debt Relief Defendants' debt relief services would have their credit card interest rates reduced; (iii) consumers who purchased the Debt Relief Defendants' debt relief services would save thousands of dollars in a short time period; and (4) the Debt Relief Defendants would provide full refunds if consumers did not save thousands of dollars in a short time period.  (Doc. 58 ¶¶ 105, 107, 45-50).  As explained above, the Amended Complaint alleges that these representations were deceptive (Doc. 58 ¶¶ 106, 108, 54-57) and material to consumer's purchasing decision (Doc. 58 ¶ 49).  Because the Amended

Complaint allegations are deemed admitted, Sallies is liable under the TSR as a direct participant in the misrepresentations and as an owner and manager of One Easy, who had at least some knowledge of the wrongful practices. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996).

### 2. Advance fees

Count IV alleges that Sallies and One Easy violated the TSR's prohibition on requesting an advance fee for debt relief services. (Doc. 58 ¶ 109-10.) Sallies and One Easy allegedly requested from consumers payments of approximately $1,000 during the initial sales calls before any of the purported services were provided. (Doc. 58 at ¶ 48, 50-51.) Because these allegations are deemed admitted, Sallies is individually liable under the TSR for requesting advance fees for debt relief services.

## II. THE FLORIDA ATTORNEY GENERAL HAS STANDING TO PURSUE CLAIMS FOR THE VIOLATIONS OF THE TSR ALLEGED IN THE AMENDED COMPLAINT

The allegations in the Amended Complaint plausibly support a determination that the Florida Attorney General has standing to pursue its claims for violations of the TSR. 15 U.S.C Section 6103(a) provides that the state may bring an action on behalf of its residents when it "has reason to believe that the interests of the residents of that State have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the Commission under section 6102 of this title." Section 6103(a) does not require that all of the alleged acts constituting a pattern or practice of telemarketing abuse take place within the state. *State v. Lexington Law Firms*, 1997 WL 367409, *3, case no. 3:96-0344 (M.D. Tenn. May 14, 1997). Rather, the criterion for

determining when a state had standing to bring an action against an alleged violator is its attorney general's reasonable belief that the state's residents are threatened. *Id.*

The allegations in the Amended Complaint are sufficient for the Court to reasonably infer that the Florida Attorney General has standing to pursue its claim for violations of the TSR. As addressed in Section I.B, above, there are substantial factual allegations establishing Defendants' violations of the TSR.  The TSR violations involved telemarketing calls to consumers throughout the United States, "including those in the state of Florida" (Doc. 58 ¶ 124).   The Defendants conducted their telemarketing and credit card laundering schemes within the Middle District of Florida (Doc. 58 ¶¶ 22-37).  Moreover, Defendants "transacted business in this District [Florida]" (Doc. 58 ¶¶ 22-37).  These allegations are sufficient for the Court to draw the reasonable inference that the Florida Attorney General had a reasonable belief "that the interests of the residents of Florida [were] being threatened or adversely affected by the Debt Relief Scam and the Credit Card Laundering Scheme designed to hide it."  Doc. 58 ¶ 17.  These allegations are sufficient for the Court to find it plausible that Defendants' conduct affected or is affecting Florida residents.  Accordingly, the Florida Attorney General has standing to pursue the claims for violations of the TSR, and it is appropriate for this Court to enter default judgment in favor of the State on the claims for TSR violations.

## III.    THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER THE FLORIDA ATTORNEY GENERAL'S CLAIMS FOR VIOLATIONS OF FDUTPA.

As alleged in the Amended Complaint, this Court has supplemental jurisdiction over the Florida Attorney General's FDUTPA claims pursuant to 28 U.S.C. § 1367.  Under 28 U.S.C. § 1367, this Court has jurisdiction over state claims that arise out of the same common nucleus of operative fact as the federal claims.  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).  Here, the federal claims (over which the Court has original jurisdiction

pursuant to 28 U.S.C. § 1331) are for violations of the FTC Act and TSR. The facts supporting

these claims (*see supra* Section I) form the exact same common nucleus of operative fact that

support the Florida Attorney General's FDUTPA claims. The relevant FDUTPA count in the

Amended Complaint (Doc. 58 ¶¶ 118-120) has almost identical wording as the FTC Act and

TSR counts because the underlying facts supporting the claims are the same. Because the Court

has jurisdiction over Plaintiffs' federal claims, and because the FDUTPA claim arises from the

same common nucleus of operative fact, this Court has supplemental jurisdiction over the Florida

Attorney General's FDUTPA claim.

## IV.   THE COURT SHOULD ENTER PLAINTIFFS' PROPOSED DEFAULT JUDGMENT

The Court has the authority to enter Plaintiffs' proposed default judgment.  Section 13(b)

of the FTC Act provides that the FTC "may seek, and after proper proof, the court issue, a

permanent injunction." 15 U.S.C. § 53(b). That "unqualified grant of statutory authority to issue

an injunction . . . carries with it the full range of equitable remedies, including the power to grant

consumer redress and compel disgorgement of profits." *FTC v. Gem Merch. Corp.*, 87 F.3d 466,

468 (11th Cir. 1996).  Broad relief is necessary and appropriate under these circumstances,

where Defendant Sallies is a recidivist who has engaged in repeated, flagrant telemarketing fraud

and has caused significant consumer injury.

### A.   The judgment should include strong injunctive relief, including bans on all telemarketing activity and marketing of debt relief services, because Sallies is a recidivist and a repeat TSR offender

It is well established that, in FTC cases, courts are "not limited to prohibiting the illegal

practice in the precise form in which it is found to have existed in the past" and that defendants

"must expect some fencing in." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965). Courts

in the Eleventh Circuit thus regularly ban defendants from engaging in conduct similar to that

which gave rise to the FTC's complaints. *See, e.g.*, *FTC v. Gem Merchandising Corp.*, 87 F.3d at 468 (11th Cir. 1996) (affirming district court decision, where the district court's order granted a banned defendants from engaging in telemarketing); *FTC v. Consumer Collection Advocates Corp.*, Case No. 14-CIV-62491-BB (S.D. Fla. Sept. 28, 2015) (entering order banning defendant from engaging in telemarketing); *FTC v. Timeshare Mega Media and Marketing Group, Inc.*, Case No. 0:10-cv-62000-WJZ (S.D. Fla. Mar. 9, 2012) (entering default judgment that banned defendants from engaging in telemarketing and timeshare resale services); *FTC v. Global Mktg.*, 594 F.Supp.2d 1281 (M.D. Fla. 2009) (entering order banning defendant from engaging in telemarketing); *FTC v. Economic Relief Technologies LLC*, Case No. 1:09-CV-3347-TCB (N.D. Ga. July 22, 2010) (entering default judgment banning defendants from engaging in telemarketing). They also regularly enjoin defendants from engaging generally in deceptive acts and practices. *See id.*

Plaintiffs' proposed default judgment is consistent with these precedents, and also tailored to the facts of this case.  In this case, Defendant Sallies perpetrated a massive credit-card-interest-rate-reduction scam using unsolicited telemarketing calls, deception, abusive language, and threats. (Doc. 58 ¶¶ 44-47; 51-57). As part of the scam, Sallies made misrepresentations to consumers who already had significant credit card debts, plunging them deeper in to debt.  (Doc. 58 ¶¶ 44, 57).  Moreover, Sallies is a repeat TSR offender against whom a federal court in Arkansas imposed a default judgment when he failed to respond to allegations of his involvement in a near-identical debt relief scam.  *State of Arkansas v. Kenneth Sallies*, No. 4:12CV00497 JLH, (W.D. Ark. Sept. 4, 2013) (**attached as Exhibit A**); *see FTC v. SmartBot.Net, Inc.*, No. Civ. 04–CV–377–JD, 2006 WL 2058491, 2 (D.N.H. Mar. 16, 2006)

(entering default judgment and awarding relief based on evidence outside the complaint allegations).

Plaintiffs therefore have submitted a proposed default judgment that bans Sallies from engaging in telemarketing and from marketing debt relief products or services (Sections I-II) and enjoins him from making misrepresentations to consumers or failing to disclose material facts about any good or service it offers to consumers (Sections III-IV). These "fencing in" provisions are appropriate in this action, and are in fact necessary to deter Sallies from future law violations.

### B.     The judgment should include an equitable monetary award.

Plaintiffs are also entitled to monetary relief equivalent to the Defendant's revenue from its illegal conduct. *FTC v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326 (11th Cir. 2013). When the FTC proceeds under Section 13(B) of the FTC Act, as it does here, the Court has equitable authority to order monetary relief equivalent to Defendant's unjust enrichment. *Id.*  In calculating the amount of monetary relief, Plaintiffs are required only to show that their calculation "reasonably approximated" the proper amount of monetary relief, and "[t]he calculation may be properly based on estimates because sometimes that is the only information reasonably available." *FTC v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1336-37 (M.D. Fla. 2010) (internal citations omitted)).

As part of its investigation, Plaintiffs obtained bank records demonstrating that One Easy's net revenue from its participation in the Debt Relief Scam was at least $2,567,174.00. (Doc. 4 at 7, fn 30, citing Dandashly Decl. App. 0718-9, ¶ 90).  These proceeds from the Debt Relief Scam were received by One Easy's bank account through wire transfers from Defendant E.M. Systems & Services, LLC, the company at the center of the Debt Relief Scam, and Defendant CardReady LLC, the credit card processing company that laundered the scam's

transactions. *Id.* Because Sallies was an owner and manager of One Easy and is individually liable for its acts and practices, the proposed default judgment enters a monetary judgment against Sallies of $2,567,174.00 (Section V).

**C.    The judgment should impose standard recordkeeping, reporting, and order acknowledgment requirements.**

The default judgment should also require Sallies to comply with standard recordkeeping, reporting, and order acknowledgement provisions. (Sections VII-X). Like the other forms of injunctive relief Plaintiffs have requested, this relief is well within the Court's power to impose, and are in fact routinely ordered in FTC cases to facilitate compliance with the other permanent injunctive provisions. *See, e.g., FTC v. Pinnacle Payment Services, LLC*, No. 1:13-cv-03455 (N.D. Ga. May 19, 2014); *FTC v. Info. Mgmt. Forum, Inc.*, No. 6:12-cv-986 (M.D. Fla. Aug. 30, 2014). Accordingly, the default judgment should require Sallies to acknowledge receipt of the default judgment. The judgment should also require Sallies to report to Plaintiffs about its future business activities and maintain record demonstrating their compliance with this order. Plaintiffs need these and other tools to properly monitor Sallies' post-order compliance with the Court's order.

<b>CONCLUSION</b>

For all these reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed default judgment as to Defendant Kenneth Sallies.

15

Dated:  September 14, 2016

Respectfully submitted,

FEDERAL TRADE COMMISSION

/s Nicholas M. May
Nicholas M. May, DC Bar # 979754
nmay@ftc.gov
Anna M. Burns, GA Bar # 558234
aburns@ftc.gov
225 Peachtree Street NE, Ste 1500
Atlanta, GA 30303
Phone: 404-656-1360 (May)
404-656-1350 (Burns)
Fax: 404-656-1390

OFFICE OF THE ATTORNEY GENERAL
STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS

Pamela Jo Bondi
Attorney General

/s Julia Harris
Julia Harris, FL Bar #884235
julia.harris@myfloridalegal.com
3507 East Frontage Road #325
Tampa, Florida 33607
Phone: 813-287-7950
Fax: 813-281-5515

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, September 14, 2016, a true and correct copy of the foregoing document was served on all counsel or parties of record via the Court's CM/ECF system.

s/ Nicholas M. May
**Nicholas M. May**
**Attorney for the Federal Trade Commission**